Derbigny, J.
delivered the opinion of the court. The defendant, being overseer of the plaintiff’s plantation, killed one of the plaintiff’s negroes. The present action is brought to recover from him the value of that slave.
The liability of the defendant depends entirely on the circumstances, which have attended the commission of this act. On these, two juries have already pronounced, in his favour: and although the powers of this court extend to the reversal of general verdicts, even when given evidently on matters of fact *700 alone, they cannot fail to have their due weight, and ought not to be disturbed, except in cases of manifest misinterpretation of the evidence.
The material facts in the case are these: the negro Harry, whom the defendant killed, was considered by his own master as ungovernable; for the plaintiff told the defendant that he would not go to his plantation, until that negro was subdued: there is evidence that the negro had even gone so far, as to lay his hands on his master. The defendant, being dissatisfied with his work, resolved to have him chastised, and foreseeing that the negro would make resistance, loaded his gun, which he left in the house, to use it, it seems, as necessity might require. He then went to have the negro whipped, and ordered another slave to tie him. Harry, as it was expected, refused to submit, and the defendant, having advanced towards him with a hoe to strike him, was met by Harry, who having also a hoe in his hands, lifted it and began to scuffle with the defendant; one and the other retreating or advancing alternatively. The defendant then threatened to shoot him, and both having dropped their hoes, began to ran towards the house, the negro being at first foremost; when, being overtaken by the defendant, within eight or ten steps of the house, he turned aside, and jumping over the adjoining *701 fence, he endeavoured to effect his escape. The defendant came out of the house with his gun, calling on Harry to stop, being then within thirty-five or forty steps from him; and as he did not stop and was gaining ground, the defendant shot him, at the distance of eighty-five yards, himself being at that moment walking.
From these facts, it results that the slave Harry was in an actual state of rebellion. Now, if we take into consideration how important it was, for the interest of the plaintiff himself and the community at large, that a slave, who had set such an example, should not escape unpunished; if we also make allowance for the state of mind in which the defendant must of necessity have been; if we further attend to the circumstance that he suffered him to get almost out of reach before he shot at him, himself walking at the time; if we believe, from the circumstances of the case, that the defendant acted with the plaintiff’s slave, as he would have acted with his own; we will be disposed to consider the whole as an unfortunate occurrence, and to excuse the defendant. Juries of the parish, better acquainted than we can be with the reasons, which made it necessary not to suffer this rebel slave to escape and defy punishment, have thought proper to discharge the defendant from *702 any responsibility: we think we should hazard much should we, without the same local information, disturb their verdicts.
Baldwin for the plaintiff, Wilson for the defendant.
It is therefore, ordered, adjudged and decreed that the judgment of the district court be affirmed with costs.